UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2008 OCT 29 PM 4:11

| | | |
|---|---|---|
| JAMES HOGAN GODWIN<br><br>Plaintiff,<br><br>v.<br><br>CONSOLIDATED CITY OF JACKSONVILLE; JACKSONVILLE SHERIFF'S OFFICE; JOHN H. RUTHERFORD, individually, and his official capacity as Sheriff of the Consolidated City of Jacksonville (also known as the Jacksonville Sheriff's Office); LENELL ANTHONY BOYER, individually and in his official capacity as an employee of the Jacksonville Sheriff's Office;; JACK T. WATSON, individually and in his official capacity as an employee of the Jacksonville Sheriff's Office; JOHN THOMAS LAMB, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; JAMES A. JOINER, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; ADAM BROWN, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; JAMES ROSS, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; DAVID W. VANAMAN, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; WILLIAM J. VANAMAN, individually, and in his official capacity as an employee of the | ) | CASE NO.:<br>3:08-cv-1038-J-16TEM<br><br>**COMPLAINT**<br>Negligence<br>Violation of Civil Rights<br>42 USC 1983, *et seq.*<br><br>(JURY TRIAL REQUESTED) |

| | | |
|---|---|---|
| Jacksonville Sheriff's Office; **ROBERT THOMASON**, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; **RICK SEIDER**, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; **JIM N. ROBINS**, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; **OTTO H. BOTTIN**, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; **CHARLES R. HUMPHREY**, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; **ROBERT L. MCCOY**, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; **MICHAEL B. BOYD**, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; **LORA A. BATASKOV**, individually, and in her official capacity as an employee of the Jacksonville Sheriff's Office; **CRISTINA M. ROSARIO**, individually, and in her official capacity as an employee of the Jacksonville Sheriff's Office; **KARL C. GRINER**, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; **JEFFERY E. FLOYD**, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; **CHAD R. HARRIS**, individually, and in his official capacity as official capacity as an employee of the Jacksonville Sheriff's Office; **GARY B. BOWLING**, individually, and in his official | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

| | | |
|---|---|---|
| capacity as an employee of the Jacksonville Sheriff's Office; **JEFFERY K. LENTZ**, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; **CHARLES C. RAY**, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; **RUSSELL L. JOHNSON**, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; **RYAN L. JOHNSON**, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; **MARTIN CHAPMAN**, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; **THOMAS M. PARRELL**, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; **SYLVIA M. MITCHELL**, individually, and in her official capacity as an employee of the Jacksonville Sheriff's Office; **DALE M. BRANNAN**, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; **JOHN B. KNUDSEN**, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; **STEVEN B. TAYLOR**, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; **SCOTT D. HAYES**, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; **JACQUELINE R. MANNING**, individually, and in her official capacity as an employee of the Jacksonville Sheriff's Office; | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

| | | |
|---|---|---|
| RICHARD E. VERCRUYSSE, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; TRAVIS L. KINLAW, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; CARLTON L. JENKINS, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; BOBBY F. BOWERS, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; HAROLD C. MCCOLLUM, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; SCOTT L. HAYES, individually, and in his capacity as an employee of the Jacksonville Sheriff's Office; THOMAS MARTIN, individually, and in his official capacity as n employee of the Jacksonville Sheriff's Office; LARRY D. SHUFORD, individually, and n his official capacity as an employee of the Jacksonville Sheriff's Office; JONATHAN C. LADUE, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; STEVE G. VAUGHAN, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; JAMES E. ANDERSON individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; GEORGE E. DUNLAP, individually, and in his official capacity as an employee of the Jacksonville Sheriff's Office; EDWARD L. HOWARD, individually, and in his official | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

| | | |
|---|---|---|
| capacity as an employee of the Jacksonville Sheriff's Office; MATTHEW C. WATSON, individually, and in his official as an employee of the Jacksonville Sheriff's Office; KENNETH J. GUTHRIE, individually, and in his capacity as an employee of the Jacksonville Sheriff's Office; KEVIN J. GUTHRIE, individually, and in his capacity as an employee of the Jacksonville Sheriff's Office; CARLOS D. SUAREZ, individually and in his official capacity as an employee of the Jacksonville Sheriff's Office; SLEIMAN ENTERPRISES, INC.; SLEIMAN HOLDINGS, INC.; JACKSONVILLE LANDING INVESTMENT, LLC; JACKSONVILLE LANDING 39, LLC; F & B LC, BENNY'S STEAK AND SEAFOOD, INC.; BENNY'S STEAK AND SEAFOOD RESTAURANT; and BENYAMIN YOUSEFZADEH,<br><br>Defendants. | )<br>)<br>)<br>)<br>) | |

COMPLAINT

COMES NOW Plaintiff James Hogan Godwin, by and through his undersigned counsel and by way of Complaint against Consolidated City of Jacksonville, John H. Rutherford, Sheriff of the Consolidated City of Jacksonville (also known as Jacksonville Sheriff's Office), Jacksonville Sheriff's Office officers: John T. Lamb, James A. Joiner, David W. Vanaman, Adam Brown, James Ross, Jack Thomas Watson, Lenell Anthony Boyer, Jim N. Robins, Robert Thomason, Rick Seider, William J. Vanaman, Otto H. Bottin, Charles R. Humphrey, Robert

L.McCoy, Michael B. Boyd, Lora A. Bataskov, Cristina M. Rosario, Karl C. Griner, Jeffery E. Floyd, Chad R. Harris, Gary B. Bowling, Jeffery K. Lentz, Charles C. Ray, Russell L. Johnson, and Ryan L. Johnson, Martin Chapman, Thomas M. Parrell, Sylvia M. Mitchell, Dale M. Brannan, John B. Knudsen, Steven B. Taylor, Scott D. Hayes, Jacqueline R. Manning, Richard E. Vercruysse, Travis L. Kinlaw, Carlton L. Jenkins, Bobby F. Bowers, Harold C. McCollum, Scott L. Hayes, Thomas Martin, Larry D. Shuford, Jonathan C. LaDue, Steve G. Vaughn, James E. Anderson, George E. Dunlap, Edward L. Howard, Matthew C. Watson, Kenneth J. Guthrie, Carlos D. Suarez, Kevin J. Guthrie (collectively hereinafter "Defendants JSO Officers"), Sleiman Enterprises, Inc. and/or Sleiman Holdings, Inc., Jacksonville Landing Investment, LLC and/or Jacksonville Landing 39, LLC; F & B LC; Benny's Steak and Seafood Restaurant, Benny's Steak and Seafood, Inc. Benyamin Yousefzadeh, alleges as follows:

## JURISDICTION AND VENUE

1. This action is an action for money damages brought pursuant to 42 U.S.C.A. §§ 1983, *et seq.*, and the Fourth, Sixth, Eight and Fourteenth Amendments of the United States Constitution, and under the common law, the statutory law, and the Constitution of the State of Florida, against the specified defendants.

2. This Court has subject matter jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331, 1332, 1367, and 1343 and 28 U.S.C.A. §§ 2201 and 2202.

3. This court has original jurisdiction over all some of the defendants in that the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

4. This court also has original jurisdiction over some of the defendants in that the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states, and that there exists an action arising under a federal question.

5. Venue is appropriate pursuant to 28 U.S.C. § 1391(b) in that all of the acts occurred in Jacksonville County, Florida, and therefore, within the district.

## PARTIES

6. At all relevant times, Plaintiff James Hogan Godwin (hereinafter "Hogan") was a citizen of the State of Georgia, residing at 5742 Fairwood Drive, Acworth, Georgia 30101.

7. The defendant Consolidated City of Jacksonville (also known as "The City of Jacksonville") (hereinafter defendant "COJ") is a governmental agency existing under the laws of the State of Florida. At all times hereinafter mentioned in this lawsuit, the Defendant COJ acted and carried on its business by and through its agents, servants and/or employees at the Jacksonville Sheriff's Office located in Jacksonville, Florida. Additionally, the agents, servants and/or employees were operating within the scope of their officially assigned and/or compensated duties.

8. The defendant Jacksonville Sheriff's Office (hereinafter defendant "JSO") is a governmental agency existing under the laws of the State of Florida. At all times

hereinafter mentioned in this lawsuit, the Defendant JSO acted and carried on its business by and through its agents, servants and/or employees including Jack Thomas Watson, Lenell Anthony Boyer, Jim N. Robins, Robert Thomason, Rick Seider, William J. Vanaman, Otto H. Bottin, Charles R. Humphrey, Robert L. McCoy, Michael B. Boyd, Lora A. Bataskov, Cristina M. Rosario, Karl C. Griner, Jeffery E. Floyd, Chad R. Harris, Gary B. Bowling, Jeffery K. Lentz, Charles C. Ray, Russell L. Johnson, and Ryan L. Johnson, Martin Chapman, Thomas M. Parrell, Sylvia M. Mitchell, Dale M. Brannan, John B. Knudsen, Steven B. Taylor, Scott D. Hayes, Jacqueline R. Manning, Richard E. Vercruysse, Travis L. Kinlaw, Carlton L. Jenkins, Bobby F. Bowers, Harold C. McCollum, Scott L. Hayes, Thomas Martin, Larry D. Shuford, Jonathan C. LaDue, Steve G. Vaughn, James E. Anderson, George E. Dunlap, Edward L. Howard, Matthew C. Watson, Kenneth J. Guthrie, Carlos D. Suarez, Kevin J. Guthrie (collectively hereinafter "Defendants JSO Officers"). Additionally, the agents, servants and/or employees were operating within the scope of their officially assigned and/or compensated duties.

9. At all relevant times herein, John H. Rutherford, James Ross, James A. Joiner, Adam Brown, John Thomas Lamb and David W. Vanaman were Directors, Administrators, or employees of the Defendant JSO who supervised other Defendants JSO Officers at Defendants Jacksonville Landing and Defendants Benny's. At all times thereafter, these Defendants were acting individually and/or in their official capacity as employees and/or administrators of defendant JSO. These defendants are responsible for the administration, operation, and supervision

of the Sheriff's Office, as well as the care, safety, custody and control of individuals like Hogan Godwin who encounter employees of the Sheriff's Office. Said defendants served as a final policy and decision makers as the officials in charge of the Sheriff's Office. For the purpose of the claims asserted under 42 U.S.C.A. § 1983, *et seq.*, these defendants are being sued in their individual and/or official capacity under the color of state law.

10. Upon information and belief the defendants: Jack Thomas Watson, Lenell Anthony Boyer, Jim N. Robins, Robert Thomason, Rick Seider, William J. Vanaman, Otto H. Bottin, Charles R. Humphrey, Robert L. McCoy, Michael B. Boyd, Lora A. Bataskov, Cristina M. Rosario, Karl C. Griner, Jeffery E. Floyd, Chad R. Harris, Gary B. Bowling, Jeffery K. Lentz, Charles C. Ray, Russell L. Johnson, and Ryan L. Johnson, Martin Chapman, Thomas M. Parrell, Sylvia M. Mitchell, Dale M. Brannan, John B. Knudsen, Steven B. Taylor, Scott D. Hayes, Jacqueline R. Manning, Richard E. Vercruysse, Travis L. Kinlaw, Carlton L. Jenkins, Bobby F. Bowers, Harold C. McCollum, Scott L. Hayes, Thomas Martin, Larry D. Shuford, Jonathan C. LaDue, Steve G. Vaughn, James E. Anderson, George E. Dunlap, Edward L. Howard, Matthew C. Watson, Kenneth J. Guthrie, Carlos D. Suarez, Kevin J. Guthrie (collectively hereinafter "Defendants JSO Officers"), at all times relevant herein, were acting individually and/or in their official capacity as agents, servants or employees of the Defendants COJ and JSO working at Jacksonville Landing and Benny's Steak and Seafood Restaurant during the time mentioned in this complaint. For the purpose of the claims asserted under 42 U.S.C.A. § 1983, *et*

*seq.*, these defendants are being sued in their individual and/or official capacity under the color of state law.

11. Upon information and belief the defendants: Jack Thomas Watson, Lenell Anthony Boyer, Jim N. Robins, Robert Thomason, Rick Seider, William J. Vanaman, Otto H. Bottin, Charles R. Humphrey, Robert L. McCoy, Michael B. Boyd, Lora A. Bataskov, Cristina M. Rosario, Karl C. Griner, Jeffery E. Floyd, Chad R. Harris, Gary B. Bowling, Jeffery K. Lentz, Charles C. Ray, Russell L. Johnson, and Ryan L. Johnson, Martin Chapman, Thomas M. Parrell, Sylvia M. Mitchell, Dale M. Brannan, John B. Knudsen, Steven B. Taylor, Scott D. Hayes, Jacqueline R. Manning, Richard E. Vercruysse, Travis L. Kinlaw, Carlton L. Jenkins, Bobby F. Bowers, Harold C. McCollum, Scott L. Hayes, Thomas Martin, Larry D. Shuford, Jonathan C. LaDue, Steve G. Vaughn, James E. Anderson, George E. Dunlap, Edward L. Howard, Matthew C. Watson, Kenneth J. Guthrie, Carlos D. Suarez, Kevin J. Guthrie (collectively hereinafter "Defendants JSO Officers"), at times relevant herein, were acting individually and/or in their official capacity as agents, servants or employees of the Defendants Sleiman, Defendants Jacksonville Landing and Defendants Benny's either contractually or through a pattern and practice and/or special relationship that the Defendants had with Defendants JSO and/or Defendants COJ. Additionally at all times relevant Defendants JSO Officers (either on-or-off duty) worked security for Defendants Sleiman, Defendants Jacksonville Landing and Defendants Benny's during the time mentioned in this complaint.

12. At all relevant times defendants Sleiman Enterprises, Inc. and Sleiman Holdings, Inc. (hereinafter be collectively referred to as "Defendants Sleiman")are corporations organized and existing under the laws of the State of Florida, and is now located in Jacksonville, Florida, with the address of One Sleiman Parkway, Suite 270, Jacksonville, Florida. At all times hereinafter mentioned in this lawsuit the defendants Sleiman acted and carried on its business by and through its agents, servants, and/or employees at its various locations, more particularly off-duty Jacksonville Sheriff's Office officers contracted to provide security for its commercial property known as Jacksonville Landings located at 2 Independent Drive, Jacksonville, Florida.

13. At all relevant times defendants Jacksonville Landing, Jacksonville Landing Investment, LLC, Jacksonville Landing 39, L.L.C. (hereinafter collectively referred to as Defendants "Jacksonville Landing") are corporations organized and existing under the laws of the State of Florida, and is now located in Jacksonville, Florida, with the address of One Sleiman Parkway, Suite 270, Jacksonville, Florida. At all times hereinafter mentioned in this lawsuit the defendant Jacksonville Landing acted and carried on its business by and through its agents, servants, and/or employees at its various locations, more particularly off-duty Jacksonville Sheriff's Office officers contracted to provide security for its commercial property known as Jacksonville Landings located at 2 Independent Drive, Jacksonville, Florida.

14. At all relevant times defendant Benyamin Yousefzadeh (hereinafter defendant Yousefzadeh), was a citizen of the State of Florida and resides at 349

Sommeset Drive, Jacksonville, Florida. At all relevant times, Mr. Yousefzadeh was the owner and operator of defendants Benny's Steak and Seafood Restaurant and Benny's Steak and Seafood, Inc. (hereinafter defendants "Benny's"), businesses organized and existing under the laws of the State of Florida, now located in Jacksonville, Florida, with the address of Jacksonville Landing, 2 Independent Drive, Suite 176, Jacksonville, Florida. At all times hereinafter mentioned in this lawsuit the defendant Yousefzadeh and defendants Benny's acted and carried on its business by and through its agents, servants, and/or employees at its location by employing defendant Jacksonville Sheriff's Office officers to provide security its restaurant.

15. At all relevant times defendant **F&B LC**, is a corporation organized and existing under the laws of the State of Florida, now located in Jacksonville, Florida, with the address of 2052 E. Clovelly Lane, St. Augustine, Florida. Upon information and belief, Defendant **F&B LC** also owns and operates defendant Benny's Steak and Seafood Restaurant. At all times hereinafter mentioned in this lawsuit the defendant **F&B LC** acted and carried on its business by and through its agents, servants, and/or employees at its location by employing defendant Jacksonville Sheriff's Office officers to provide security its businesses.

16. Defendants Benny's Steak and Seafood Restaurant, Benny's Steak and Seafood, Inc. and **F&B LC** shall from hereinafter be collectively referred to as "Defendants Benny's."

17. Plaintiff Godwin has complied with all conditions precedent to the filing of this claim as required by Fla. Stat. § 768.28, to wit: notice was given to the Jacksonville Sheriff's Office and the Florida Department of Insurance within three ("3") years after the claim accrued and the Florida Department of Insurance is deemed to have finally denied the claim because of its failure to make a final disposition of the claim within six months after it was filed.

18. The Jacksonville Sheriff's Office's sovereign immunity to tort claims is waived pursuant to Fla. Stat. § 768.28.

## FACTUAL ALLEGATIONS

19. On or about October 30, 2004, Plaintiff James Hogan Godwin, then a sophomore student at the Athens Technical College located in Athens, Georgia, along with friends Amy Chung, Lauren Cole, Matt Raville and Andy Elliott drove to Jacksonville, Florida to partake in the Florida-Georgia football game festivities. Hogan Godwin and his friends went to Jacksonville Landings ("The Landings"), a popular tourist location. Mr. Godwin and friends had dinner at a sushi restaurant located on the second story of this multi-level establishment.

20. While Hogan paid the dinner bill, his friends proceeded to the lower level of The Landings. Hogan attempted to catch up with friends but when he arrived on the lower level, he did not see them so he began looking inside various businesses to find his then girlfriend, Amy Chung.

21. Benny's Steak and Seafood Restaurant is owned and operated by defendant Benyamin Yousefzadeh and defendants mentioned in paragraphs (14) through (16).

22. Upon information and belief, Defendant Benny's Steak and Seafood Restaurant is located on the premises of defendants mentioned in paragraphs (12) and (13) called Jacksonville Landing (also known as "The Landing"). Therefore, it is believed that Mr. Yousefzadeh had a lease agreement with Defendants Sleiman and/or Defendants Jacksonville Landing. As part of the agreement, Defendants mentioned in paragraphs (14) through (16) were required to secure security during the Florida/Georgia game weekend.

23. Upon information and belief, Defendants Sleiman and/or Defendants Jacksonville Landing had a contractual agreement with the Defendant JSO. Under the terms of the agreement, it is also believed that Defendants Sleiman and/or Defendants Jacksonville Landing were permitted to employ off-duty Defendants JSO Officers to provide security for the "The Landing" property, *inter* alia, during major events such as the Florida-Georgia game weekend.

24. Therefore, defendant David W. Vanaman, then a lieutenant with the JSO, visited all the businesses in The Landing and asked the merchants many officers would they like for the Florida-Georgia game weekend, and then he made all the arrangements, including the scheduling of the locations each officer was to work. Upon information and belief, it has been determined that defendant Vanaman assigned three off-duty police officers to provide security for Defendant Benny's. They were defendants: Jack T. Watson, Lenell A. Boyer, and Jim N. Robins.

25. So, when Hogan came upon Benny's Steak and Seafood Restaurant, he was unaware that off-duty police officers of Defendant JSO were providing security for the restaurant.

26. When Hogan approached the door to enter restaurant, a man described as short, wore a T-shirt, baseball cap and napkin stuff in his belt was seated at the front door. When Hogan tried to enter restaurant, the man told Hogan that he could not go into the restaurant because it was full. Hogan stated that he merely wanted to look inside to see if his girlfriend had gone inside. The man refused to allow Hogan to enter the restaurant.

27. Hogan waited a few minutes outside the restaurant and observed other patrons entering the restaurant. He then asked the man again to let him look inside and he was rejected.

28. Hogan stated that he was not going to leave.

29. The man grabbed Hogan. Hogan pulled away and pushed the man. At that time, the man punched Hogan in the eye and a fight started.

30. Upon information and belief, the man is believed to be defendant Jack T. Watson.

31. Immediately after the fight begun, Hogan was grabbed from behind by defendant Lenell Anthony Boyer and forced to the ground.

32. Before Hogan realized what was happening to him, a mob of men began punching and kicking him about his face and body.

33. Hogan believed the mob to be associates of the man and estimated that there were at least 20 to 30 men attacking him while he was on the ground.

34. Five minutes into the beating, Hogan learned for the first time that his assailants were law enforcement officers because defendant Boyer placed handcuffs on his wrists. He immediately acquiesced.

35. Upon returning to his feet, Hogan learned that he was assaulted by at least 3-4 uniformed officers and several plain clothed officers identified in paragraphs (8) through (11). At no time prior to the placement of the handcuffs did any of the men identify themselves as members of the Sheriff's office and/or law enforcement. Hogan believed that he was being attacked by friends of the man, and therefore tried to defend himself.

36. Hogan was arrested and charged with resisting arrest and trespass.

37. As a result of the brutal beating, Hogan bled profusely on the grounds in front of the restaurant leaving large pools of blood.

38. Hogan sustained severe injuries which when Defendants JSO officers presented him to the jail officials for booking, they refused to accept in his current condition. Therefore, defendant JSO officers were forced to take Hogan to Shands Jacksonville Emergency Room for treatment of his injuries.

39. While at the hospital Hogan was treated for multiple facial contusions including injuries to his left eye, headache, a broken tooth and severe pain. Hogan also suffered severe emotional distress and medical expenses due the physical injuries caused by the assault by off and on duty JSO officers.

40. Defendants JSO/JSO Officers acted with conscious indifference and deliberate disregard. Their improper actions and/or inactions including but not limited to: physical beating, improper physical abuse and restraint, failure to provide immediate medical attentions, failure to provide and/or secure the safety of Mr. Godwin clearly demonstrated a complete and total disregard for Mr. Godwin and other like him.

41. Plaintiff is informed and believes that Defendants identified in paragraphs (7) through (9) and paragraphs (12) and (13) either witnesses and/or captured the incident on surveillance video at the Landing and at the JSO.

42. Hogan and his parents spent many years and financial expenses defending him against the charges alleged purported by the defendants referenced in paragraphs (8) through (11).

43. All charges were ultimately dismissed on or about September 2007.

44. Plaintiff is informed and believes that prior to his arrival to the restaurant, Defendant Yousefzadeh and Defendant Benny's Steak and Seafood Restaurant had a customer who drank too much and was become disruptive.

45. Defendant Yousefzadeh asked defendant Boyer to remove the customer from the premises and told Defendant Boyer that the customer could not return to the restaurant.

46. This customer was not Plaintiff James Hogan Godwin.

47. Defendants mentioned in paragraphs (14) through (16) have a duty to provide a safe environment for its patrons and to ensure that its employees and staff did not expose its customers or potential customers to any unnecessary harm or danger.

48. Defendants in paragraphs (14) through (16) had an obligation to ensure that its staff (Defendants JSO officers) were properly supervised and trained to deal with customers in a manner that would not expose them to any threat of harm or danger, specifically any physical attacks by its mans and/or security staff.

49. Plaintiff James Hogan Godwin was not the customer that was previously escorted out of the restaurant. However, based on the event of October 30, 2004, the manner in which the Defendants JSO officers restrained Hogan from entering the restaurant by attacking him rose to the level of assault and battery and excessive use of force.

50. Defendants mentioned in paragraphs (7) through (9) and paragraphs (12) through (16) had a duty to provide a safe and security environment for all its patrons by providing proper and adequate security. To do this, it is their responsibility to ensure that its employees, agents, servants, etc. are professional and properly trained to handle situations which would cause a threat or harm to its patrons.

51. By requiring its tenants to seek security from Defendant JSO, Defendants in paragraphs (12) through (16) exposed Hogan to an unnecessary foreseeable harm which resulted in the injuries sustained by Hogan on October 30, 2004.

52. Defendant JSO/JSO Officers has an inherent obligation to protect and keep safe from harms all citizens in its jurisdiction. This includes and is not limited to the tourists and patrons of Jacksonville Landings.

53. Plaintiff is informed and believes that Defendants David W. Vanaman, James Joiner, John T. Lamb, James Ross, and Adam Brown referenced in paragraph (9) were present at The Landings on the night in question. Said defendants are believed to have been responsible for the administration, operation and supervision of all Defendant JSO officers assigned to work The Landing during the Florida/Georgia game weekend.

54. Said defendants were responsible for the care, safety, custody and control of individuals like Hogan Godwin who encountered employees of the JSO. Said defendants breached their duty to protect Mr. Godwin when they failed to control its officers, allowing them to violently beat and unlawful arrest Mr. Godwin. Defendants JSO officers conduct was reckless and committed with deliberate indifference and conscious disregard for the safety and well-being of Hogan Godwin.

55. Hogan Godwin had a reasonable expectation that he would be afforded the same protection from harm or danger as the citizens of the State of Florida. Instead of protecting Mr. Godwin, the defendants listed in paragraphs (8) through (11) subjected Mr. Godwin to a severe beating without justification, provocation or probable cause.

56. The defendants identified in paragraphs (7) through (11) acted in their individual and official capacities as security for the businesses located at The

Landing. The Defendants JSO officers should have defused the situation and worked towards a nonviolent resolution.

57. Mr. Godwin was deprived of his civil rights when the defendants listed in paragraphs (8) through (11) acted under the color of law when they beat him, commenced an unlawful arrest and prosecuted him. At all times relevant, Mr. Godwin had not committed any crime when he tried to enter the restaurant or when the defendant Jack Watson grabbed him and punched him the face.

COUNT 1

(VIOLATION OF FEDERAL CIVIL RIGHTS, 42 U.S.C. § 1983 *et seq.* – CRUEL AND UNUSUAL PUNISHMENT, EIGHTH AMENDMENT)

58. Plaintiff restates and re-alleges each and every factual allegation contained in paragraphs 1 through 57.

59. When Plaintiff confronted defendant Watson a second time about entering Benny's Steak and Seafood Restaurant, defendant Watson individually and under the color of law grabbed Mr. Godwin which initiated the violent attack on Mr. Godwin.

60. Only after Mr. Godwin had been brutally beaten by nearly 20-30 Defendants JSO officers did defendant Boyer identify himself a police officer. He used his authority as a law enforcement officer to tell Mr. Godwin that he was under arrest.

61. Defendant Boyer (listed in paragraphs 9 through 11) and his fellow Defendants JSO officers acted under the color of law to deprive Mr. Godwin of his

constitutionally protected liberty interest to be free from unlawful arrest, imprisonment, and prosecution.

62. At all times relevant herein, defendant Boyer negligently, willfully, wantonly and grossly negligently acted with defendants JSO officers as agents of the JSO to intentionally, purposefully and jointly beat Mr. Godwin to causing Mr. Godwin to defend himself.

63. At all times relevant herein, defendant Watson negligently, willfully, wantonly and grossly negligently acted with defendants JSO officers as agents of the JSO to intentionally, purposefully and jointly beat Mr. Godwin to causing Mr. Godwin to defend himself.

64. At all times relevant herein, Defendants JSO Officers were acting under color of law when they jointly engaged with defendants Watson and Boyer to commit certain acts. Defendants JSO officers acted negligently, willfully, wantonly and grossly negligently acted with defendants JSO officers as agents of the JSO to intentionally, purposefully and jointly beat Mr. Godwin to causing Mr. Godwin to defend himself.

65. Defendants JSO Officers acted individually and jointly with officials in depriving Mr. Godwin of a constitutional right, all said defendants acted under the color of law.

66. The Defendants' employees were acting under the color or pretense of State law, customs, practices, usage or policy at all times mentioned herein as law enforcement officers, security, supervisors, administrators or other such personnel

and/or employees had a certain duties imposed upon them with regard to James Hogan Godwin.

67. The Defendants' actions were consciously indifferent and deliberately indifferent to Mr. Godwin during the time period mentioned above in the following particulars:

AS TO ALL DEFENDANTS LISTED WITHIN PARAGRAPHS (7) THROUGH (11)

a. In creating a custom, policy and/or practice which allows its agents, servants, and/or employees, intentionally violently attack and beat Mr. Godwin without justification, provocation or probable cause;
b. In failing to properly treat and care for Mr. Godwin;
c. In failing to protect Hogan Godwin from harm;
d. In failing to properly train, monitor and/or supervise its agents, servants and/or employees to prevent Hogan Godwin from being improperly abuse;
e. In allowing the use of excessive force against Hogan Godwin;
f. In failing to appreciate that the amount of physical force used was in the excess of that which was necessary;
g. In failing to take alternative measure which were then and there available to the Defendants instead of the use of violence on Hogan Godwin;
h. In failing to properly train and educate the Defendants in the proper use of force.

68. Because probable cause is required for an arrest without a warrant, the honesty of the police is of the utmost importance. Defendants COJ and JSO knew or should have known of the need to properly supervise and train its officers in dealing with the public during high profile events, especially since they knew the local businesses will be patronized by out of town visitors for the Florida/Georgia game weekend.

69. As a direct and proximate result of Defendants acts of willful, malicious, conscious and deliberate indifference, individually, jointly, severally and in combination thereof, the Plaintiff suffered deprivations of his rights secured by the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

70. As a direct and proximate result of said acts, Plaintiff Godwin suffered conscious pain, suffering, indignity and loss of his aforementioned federal rights. Plaintiff has suffered mental anguish, emotional distress, humiliation, physical injury and great expense, including medical bills, attorney fees and costs, loss of enjoyment of life, and will likely suffer from the effects of the Defendants' action now and in the future. As a result of Plaintiff's injuries it is justify to seek an award of ACTUAL, CONSEQUENTAL AND PUNITIVE against Defendants listed in paragraphs (7) through (11)

## COUNT II

## (CONSPIRACY TO VIOLATE 42 U.S.C. § 1983 PURSUANT TO 42 U.S.C. § 1985, *et seq.*)

71. Plaintiff restates and re-alleges each and every factual allegation contained in paragraphs 1 through 70.

72. The Defendants' employees were acting under the color or pretense of State law, customs, practices, usage or policy at all times mentioned herein as law enforcement officers, security, supervisors, administrators or other such personnel and/or employees had a certain duties imposed upon them with regard to James Hogan Godwin.

73. The Defendants' actions were consciously indifferent and deliberately indifferent to Mr. Godwin during the time period mentioned above in the following particulars:

**AS TO ALL DEFENDANTS LISTED WITHIN PARAGRAPHS (7) THROUGH (11)**

a. In creating a custom, policy and/or practice which allows its agents, servants, and/or employees, intentionally violently attack and beat Mr. Godwin without justification, provocation or probable cause;

b. In failing to properly treat and care for Mr. Godwin;

c. In failing to protect Hogan Godwin from harm;

d. In failing to properly train, monitor and/or supervise its agents, servants and/or employees to prevent Hogan Godwin from being improperly abuse;

e. In allowing the use of excessive force against Hogan Godwin;

f. In failing to appreciate that the amount of physical force used was in the excess of that which was necessary;

g. In failing to take alternative measure which were then and there available to the Defendants instead of the use of violence on Hogan Godwin;

h. In failing to properly train and educate the Defendants in the proper use of force.

74. Defendants mentioned in paragraphs (8) through (11) acted in concert with each other for the purpose of injuring Mr. Godwin. Once Defendant Watson grabbed Mr. Godwin and punched him the face, without justification, provocation or probable cause, he conspired with Defendant Boyer and Defendants JSO Officers to continue to beat him.

75. The defendants then initiated an unlawful detention, arrest and lengthy prosecution on charges which amounted to a misdemeanor. Hogan Godwin was charged on October 30, 2004 and the charges were not dismissed until September 2007.

76. As a direct and proximate result of Defendants acts of willful, malicious, conscious and deliberate indifference, individually, jointly, severally and in combination thereof, the Plaintiff suffered deprivations of his rights secured by the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

77. As a direct and proximate result of said acts, Plaintiff Godwin suffered conscious pain, suffering, indignity and loss of his aforementioned federal rights. Plaintiff has suffered mental anguish, emotional distress, humiliation, physical

injury and great expense, including medical bills, attorney fees and costs, loss of enjoyment of life, and will likely suffer from the effects of the Defendants' action now and in the future. As a result of Plaintiff's injuries it is justify to seek an award of ACTUAL, CONSEQUENTAL AND PUNITIVE against Defendants listed in paragraphs (7) through (11)

## COUNT III

## VIOLATION OF FEDERAL CIVIL RGHTS 42 U.S.C.A.§ 1983 *et seq.*

## VIOLATION OF DUE PROCESS – 14TH AMENDMENT

78. Plaintiff restates and re-alleges each and every factual allegation contained in paragraphs 1 through 77.

79. The Defendant officers, agents, and/or employees, individually, were acting under the color or pretense of Florida State law, customs, practices, usage or policy at all times mentioned herein as law enforcement, supervisor, security or other such personnel or employees and had certain duties imposed upon them with regard to Hogan Godwin.

80. The Defendants were grossly negligent, reckless, wanton, consciously indifferent and deliberately indifference to the decedent and acting in an egregious and arbitrary conduct during the time period mentioned above, in the following particulars:

AS TO ALL DEFENDANTS LISTED WITHIN PARAGRAPHS (7) THROUGH (11)

a. In creating a custom, policy and/or practice which allows its agents, servants, and/or employees, intentionally violently attack and beat Mr. Godwin without justification, provocation or probable cause;

b. In failing to properly treat and care for Mr. Godwin;

c. In failing to protect Hogan Godwin from harm;

d. In failing to properly train, monitor and/or supervise its agents, servants and/or employees to prevent Hogan Godwin from being improperly abuse;

e. In allowing the use of excessive force against Hogan Godwin;

f. In failing to appreciate that the amount of physical force used was in the excess of that which was necessary;

g. In failing to take alternative measure which were then and there available to the Defendants instead of the use of violence on Hogan Godwin;

h. In failing to properly train and educate the Defendants in the proper use of force.

81. As a direct and proximate result of Defendants acts of willful, malicious, conscious and deliberate indifference, individually, jointly, severally and in combination thereof, the Plaintiff suffered deprivations of his rights secured by the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

82. As a direct and proximate result of said acts, Plaintiff Godwin suffered conscious pain, suffering, indignity and loss of his aforementioned federal rights. Plaintiff has suffered mental anguish, emotional distress, humiliation, physical injury and great expense, including medical bills, attorney fees and costs, loss of enjoyment of life, and will likely suffer from the effects of the Defendants' action now and in the future. As a result of Plaintiff's injuries it is justify to seek an award of **ACTUAL, CONSEQUENTAL AND PUNITIVE** against Defendants listed in paragraphs (7) through (11).

## COUNT VI

## NEGLIGENCE

83. Plaintiff restates and re-alleges each and every allegation contained in paragraphs 1 through 82.

84. Defendants mentioned in paragraphs (7) through (11) breached their duty of care to Mr. Godwin when they failed to properly supervise Defendant Watson, Defendant Boyer and Defendants JSO Officers who violently beat him in a mob and/or gang-like mentality which is conduct that is dangerous to others.

85. The injuries imposed on Mr. Godwin by Defendants JSO Officers were foreseeable to Defendants as evidenced by its department policy which stated that the safety of the public demands total mental and physical functioning for members of the office, truthfulness and that said Sheriff's Officer has a responsibility in the interest of public safety.

86. Mr. Godwin was injured by said Defendants because of their negligent supervision otherwise Mr. Godwin would not have been violently assaulted by the defendants.

87. Defendants mentioned in paragraphs (12) and (13) were the owners and operators of The Landing; and therefore an inherent duty and obligation to provide reasonable protection and safety for it customers. Furthermore by entering into a contractual agreement with the JSO to hire its off-duty officers to provide security, Defendants Jacksonville Landing had a duty to properly manage and supervise all JSO officers assigned to work on its premises.

88. Said Defendants also had a duty to reasonably protect and keep safe from harm and danger, its customers like Mr. Godwin who enters on its premises.

89. Defendants mentioned in paragraphs (14) through (16) had a duty to reasonably protect and keep safe from harm and danger, its customers like Mr. Godwin who enters on its premises.

90. All Defendants acting by and through its agents, servants and employees, did act negligently, willfully, wantonly and grossly negligently in the following particulars:

AS TO ALL DEFENDANTS LISTED IN PARAGRAPHS (7) THROUGH (16)

a. In failing to proper supervise and/or train its security officers (Defendants JSO Officers);

b. In using excessive force against Mr. Godwin;

c. In failing to appreciate that the amount of force used was in excess of that which was necessary;

d. In failing to take alternative measures which were then and there available to the Defendants instead of physical force used at the time,

e. In failing to properly train and educate the Defendants JSO officers in the proper use of force;

f. In failing to properly train the individuals responsible for detaining and arresting Mr. Godwin and others like him;

g. In failing to protect Mr. Godwin;

h. In failing to provide immediate medical attention to Mr. Godwin.

i. In failing to exercise reasonable diligence in keeping its premises safe and secure from brutal attacks at the hand of its agents, servants, and/or employees.

j. In failing to perform the appropriate interviews and/or background checks when hiring and assigning employees;

k. In entering into a pattern and practice of failing to conduct appropriate interviews and background checks regarding new and/or assigned employees;

l. In entering into a pattern and practice of hiring and/or assigning unqualified personnel;

m. Inn failing to properly train, monitor and/or supervise its agents and/or employee to prevent Hogan Godwin or others from being improperly abused and beaten.

91. As a direct and proximate result of said acts, Plaintiff Godwin suffered conscious pain, suffering, indignity and loss of his aforementioned federal rights. Plaintiff has suffered mental anguish, emotional distress, humiliation, physical injury and great expense, including medical bills, attorney fees and costs, loss of enjoyment of life, and will likely suffer from the effects of the Defendants' action now and in the future. As a result of Plaintiff's injuries it is justify to seek an award of ACTUAL, CONSEQUENTAL AND PUNITIVE against Defendants listed in paragraphs (7) through (16).

COUNT V

(ASSAULT AND BATTERY)

92. Plaintiff Godwin restates and re-alleges each and every factual allegation contained in paragraphs 1 through 93.

93. Defendant Watson, Defendant Boyer and Defendants JSO Officers acted with the intent to cause harmful and offensive contact to Mr. Godwin by, *inter alia,* punching and kicking him about the face, head and body.

94. As a direct and proximate result of said acts, Plaintiff Godwin suffered conscious pain, suffering, indignity and loss of his aforementioned federal rights. Plaintiff has suffered mental anguish, emotional distress, humiliation, physical injury and great expense, including medical bills, attorney fees and costs, loss of

enjoyment of life, and will likely suffer from the effects of the Defendants' action now and in the future. As a result of Plaintiff's injuries it is justify to seek an award of **ACTUAL, CONSEQUENTAL AND PUNITIVE** against Defendants listed in paragraphs (7) through (11).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Godwin respectfully requests that his Honorable Court:

A. Enter judgment on behalf of Plaintiff Godwin against Defendants John H. Rutherford, Sheriff of Jacksonville County, Jack T. Watson, Lenell Athony Boyer, Jim N. Robins, John T. Lamb, James A. Joiner, David W. Vanaman, Adam Brown, James Ross, Robert Thomason, Rick Seider, William J. Vanaman, Otto H. Bottin, Charles R. Humphrey, Robert L. McCoy, Michael B. Boyd, Lora A. Bataskov, Cristina M. Rosario, Karl C. Griner, Jeffery E. Floyd, Chad R. Harris, Gary B. Bowling, Jeffery K. Lentz, Charles C. Ray, Russell L. Johnson, and Ryan L. Johnson, Martin Chapman, Thomas M. Parrell, Sylvia M. Mitchell, Dale M. Brannan, John B. Knudsen, Steven B. Taylor, Scott D. Hayes, Jacqueline R. Manning, Richard E. Vercruysse, Travis L. Kinlaw, Carlton L. Jenkins, Bobby F. Bowers, Harold C. McCollum, Scott L. Hayes, Thomas Martin, Larry D. Shuford, Jonathan C. LaDue, Steve G. Vaughn, James E. Anderson, George E. Dunlap, Edward L. Howard, Matthew C. Watson, Kenneth J. Guthrie, Carlos D. Suarez, Kevin J. Guthrie on Counts I, II, III, IV and V;

B. Enter judgment on behalf of Plaintiff Godwin against Defendants Benyamin Yousefzadeh, Benny's Steak and Seafood Restaurant, F&B LC, and Benny's Steak and Seafood, Inc., on Counts IV and V;

C. Enter judgment on behalf of Plaintiff Godwin against Defendants Sleiman Enterprises, Inc., and Sleiman Holdings, Inc., on Counts IV and V;

D. Enter judgment on behalf of Plaintiff Godwin against Defendants Jacksonville Landing Investment, LLC and Jacksonville Landing 39, LLC on Counts IV and V;

D. Award Plaintiff Godwin ACTUAL, CONSEQUENTIAL, COMPENSATORY, PUNITIVE damages and other damages against all said Defendants in amounts to be determined by the jury;

D. Award Plaintiff Godwin reasonable attorneys' fees, court costs, expenses, prejudgment interest and post-judgment interest; and

E. Grant any other such relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Godwin requests a jury trial for all claims and issues asserted in this action.

Respectfully submitted

HENRICHSEN SIEGEL, P.L.L.C.
1648 Osceola Street
Jacksonville, Florida 32204
Tel: (904) 381-8183
Fax: (904) 381-8191

Fla Bar No. 0155217